J. CHRIS JENSEN et al., Appellants, v. L. ZURMUEHLEN,
Mayor, et al., Appellees.

**MUNICIPAL CORPORATIONS:** Municipal Water Plant—Taxation.
1 Under Sections 724, 747-a, 748, and 894, Subdiv. 5, Code Supplement, 1913, and Sections 749, 750, Code, 1897, the duty and power of the waterworks trustees is not alone confined to the fixing of rental rates, but also extends to the estimating the deficit, if any, to be provided for by the tax; and upon the performance of this duty by the trustees, the city council is obliged to levy the tax therefor, provided the trustees have not transcended the provisions of the statutes; and this obligation of the city and its agencies is not optional nor discretionary, but is mandatory, that a sufficient sum total be provided for the maintenance of the plant.

**MUNICIPAL CORPORATIONS:** Municipal Water Plant—Taxation
2 —Levy to Produce Surplus. The allegations of answer that the levy sought to be made in a suit of waterworks trustees against a city council would only increase a surplus held good on demurrer, as trustees have no statutory duty to accumulate a surplus.

*Appeal from Pottawattamie District Court.*—SHELBY CULLISON, Judge.

MARCH 11, 1919.

ACTION of mandamus brought against the defendants as city council of Council Bluffs, by the plaintiffs as the waterworks trustees of said city. The petition was dismissed by the district court, and plaintiffs have appealed.—*Affirmed.*

*W. H. Killpack,* for appellants.

*Tinley, Mitchell, Pryor & Ross,* for appellees.

EVANS, J.—Plaintiffs' action is predicated upon Chapter 5 of Title V of the Code and Supplement. This chapter comprises Sections 742 to 750, inclusive. It authorizes cities

of the first class, upon a majority vote of the electors, to erect or purchase waterworks, and to issue bonds therefor. Among the general powers conferred by Chapter 4 of said Title V upon cities and towns, Section 724, Code Supplement, 1913, specifies the power to assess water rates and rentals, and to levy a tax for the maintenance and operation of waterworks.

Section 894 (Sub. 5), Code Supplement, 1913, provides for a special tax, as follows:

"A tax not exceeding, in any one year, five mills on the dollar, which, with the water rates or rents authorized, shall be sufficient to pay the expenses of running, operating and repairing waterworks owned and operated by any city or town, and the interest on any bonds issued to pay all or any part of the cost of construction, renewal, repair or extension of such works; but such tax shall not be levied upon property which lies wholly without the limits of the benefit and protection of such works, which limits shall be fixed by the council each year before making the levy."

Section 747-a, Code Supplement, 1913, provided that the waterworks so purchased or erected, pursuant to Chapter 5, "shall be managed and operated by a board of waterworks trustees." These are to be three in number, and are to be appointed by the mayor, for fixed terms of six years.

Section 748, Code Supplement, 1913, is as follows:

"The said board of trustees shall have the power to carry into execution the contract or contracts for the purchase or erection of such waterworks, and to employ a superintendent and such other employees as may be necessary and proper for the operation of such works, for the collection of water rentals, and for the conduct of the business incident to the operation thereof. The said board of trustees shall require of the superintendent, and of the other employees as they may deem proper, good and suf-

ficient bonds, the amount thereof to be fixed and approved by said board, for the faithful performance of their duty, such bonds to run in the name of the city and to be filed with the city treasurer and kept in his office. All money collected by the board of waterworks trustees shall be deposited at least weekly by them, with the city treasurer; and all money so deposited and all tax money received by the city treasurer from any source, levied and collected for and on account of the waterworks, shall be kept by the city treasurer as a separate and distinct fund. The city treasurer shall be liable on his official bond for such funds the same as for other funds received by him as such treasurer. Such moneys shall be paid out by the city treasurer only on the written order of the board of waterworks trustees, who shall have full and absolute control of the application and disbursement thereof for the purposes prescribed by law, including the payment of all indebtedness arising in the construction of such works, and the maintenance, operation, and extension thereof."

Code Section 749 is as follows:

"The said board of waterworks trustees shall from time to time fix the water rentals or rates to be charged for the furnishing of water, and such rates shall be sufficient, together with the proceeds of the five-mill water levy and the sinking fund levy of two mills, for the maintenance and operation of such works, the proper and necessary extension thereof, for all repairs, and for the payment of the purchase money or cost, principal and interest, incurred in the purchase or erection of such works, as the same falls due, according to the tenor of the mortgage and bonds given to secure the payment of such purchase price or cost. The said board of waterworks trustees shall make out and file in the office of the city clerk quarterly statements, giving full and complete reports of the receipts and disbursements handled and disbursed by them in the administration of

their trust; such reports to be filed on the second Monday of January, April, July and October for the quarters preceding the first days of said months. Such reports shall be audited by the board of public works of such city. In the event, however, that said city may not have a board of public works, such reports shall be audited by the city council."

The plaintiffs, as trustees, certified to the defendants, as a city council, the necessity for the five-mill levy, in addition to the proceeds of rates and rentals, for the purpose of meeting the operating expenses and the maturing interest. The council refused to make such levy, either at the rate of five mills or at any lower rate, on the ground that the proceeds of the rates and rentals long since adopted, and in force and then continuing, were "sufficient" to meet all the current expense of operation and all the maturing obligations. In their answer herein, the defendants pleaded affirmatively the facts in support of such contention. These were, in substance, that the sum total of rates collected and the five-mill tax greatly exceeded any contemplated expenditure, and that excessive collection had already resulted in a large surplus; that the proceeds of the rates in force and in course of collection would meet all the obligations of the current year, and leave a surplus of $60,000. Detailed figures of receipts and expenses were pleaded. Plaintiffs demurred to this answer. The demurrer being overruled, they elected to stand.

This reference to the pleadings foreshadows the point which we deem decisive, although it has not been argued by plaintiffs. The arguments disclose, also, that the differences of view between the contending parties are more numerous than the decisive point herein. Broadly stated, the contention for the plaintiffs is that the duty (and therefore the power) of estimating the current cost, and of meeting such cost by fixing the rental rates and by estimating the de-

ficiency to be raised by taxation within the five-mill limit, is cast upon the trustees; that their determination, so made and certified, is conclusive on the council. For defendants, it is contended that the power of discretion conferred upon the board of trustees is confined to the fixing of rental rates; that the power conferred by Section 894 to make a five-mill levy is permissive only; that discretion is thereby conferred on someone; that such discretion is necessarily so conferred upon the city council as the only body representative of the city to which the power of taxation can be delegated by the legislature. We are quite clear, however, that the controversy at this point does not fairly involve the question whether the trustees may exercise the taxing power.

In *Martin-Strelau Co. v. City of Dubuque,* 149 Iowa 1, we construed these statutes, and held, in effect, that they cast upon the trustees the duty and the power, not only to fix the rental rates, but also to ascertain or estimate the deficiency to be provided for by the tax. Such was the implication, also, in *J. W. Edgerly & Co. v. City of Ottumwa,* 174 Iowa 205. The statute provides two sources of income: (1) Rental rates; (2) tax.

It is mandatory that the sum total to be drawn from both sources shall be "sufficient" for the maintenance of the plant. If the power of judgment and discretion be conferred upon the trustee as to one source and upon the councilman as to the other source, to which of the two shall the mandate speak? If the sum total from both sources be not "sufficient," who is in default? Each may charge the deficiency to the paring of the other; and who shall declare judgment between them? Clearly, the statute lays its mandate upon the trustees to so provide that the sum total of proceeds from the two sources shall be "sufficient." It logically follows that their power of judgment and discretion over these two sources must be as broad as the mandate.

1. MUNICIPAL CORPORATIONS: municipal water plant: taxation.

This duty of judgment and ascertainment having been performed by the trustees, it becomes a guide to the city council in the performance of its duty as to the levy, and is obligatory upon it as such, provided always that the trustees themselves have not transcended the statute. The underlying idea of the statute is that, when the city has once committed itself to the purchase of waterworks, its performance of its undertaking becomes obligatory. Performance is not optional or discretionary on the part of the city or its agencies. The plan of performance is set forth in the statute. Though the levy of the tax is permissive, under Section 894, it is also mandatory, under Section 749. The statutory plan of performance must be followed. This plan creates a trusteeship, to manage the plant and its finances. This trusteeship bears some analogy to a receivership of a private corporation. The possession and management of the plant bear some analogy, also, to the sequestration and *custodia legis* of private property. A real trust is created which holds the physical property and the funds, above the mere discretion of the city or its council. The execution of this trust is entirely consistent with the recognition of the ultimate right and present interest of the city in the trust property.

With this analysis of the statute, we turn to the affirmative allegations of the answer already referred to above. From these it appears that the rental rates now and for a long time past put in effect by the trustees will produce a revenue for the current year above $143,000; that a large surplus has already been accumulated by excessive collections; that the sum total of rentals, plus the surplus on hand, will fully meet all maturing obligations and still leave an unexpended balance of $60,000 on hand. This unexpended balance or surplus has no reference to the sinking fund provided for by the two-mill levy under Section 742. This two-mill levy for a sinking fund has been regularly made, and no controversy over it is presented herein.

It appears from the answer that a five-mill levy would produce $26,000; that, if it were made, its effect would be only to increase the needless surplus to a total of $86,000.

2. MUNICIPAL COR-PORATIONS: municipal water plant: taxation: levy to produce surplus.

Instead of making an issue of fact upon these allegations of the answer, the trustees admitted the same by demurring thereto; and it is upon their demurrer that they now stand, presenting to us a pure question of law. As a matter of law, we think the facts thus pleaded and admitted presented a good defense. The power conferred by the statute upon the trustees is commensurate with the duty laid upon them. They have statutory power to do their statutory duty. When they reach the full limit of duty performed, they will likewise reach the full limit of power conferred. As a matter of law, they were under no statutory duty to accumulate a surplus, as such.

If an issue of fact had been made upon the allegations of the answer, other considerations would enter the discussion. It is to be granted that the duties of the trustees must have some flexibility and elasticity. We do not hold that the trustees are required to estimate accurately, in advance, the exact amount of the total proceeds to be raised, and that they shall be deemed to transcend their authority when such exact amount is exceeded to any extent. We recognize as a practical fact that only approximate estimates are possible. We recognize, also, that practical wisdom in the performance of such duty would require a margin of safety in the estimate. Reasonable approximation is all that can be required, even though it result in an unexpended balance of some amount. But this consideration applies only to a question of fact, and not to a mere question of law. What would be a reasonable margin of safety in a given case would ordinarily be a question of fact, which should be resolved with liberality in favor of the estimate of the trustees. A working balance of some reasonable amount might, as a matter

of fact, be deemed a necessity to the practical performance of their duty by the trustees. These are questions which we do not pass upon by our holding on this demurrer. But they are foreclosed herein by the admissions inherent in such demurrer. For the reason indicated, the judgment entered below is—*Affirmed.*

All the justices concur.