CHARLES SALTZMAN, Appellee, v. CITY OF COUNCIL BLUFFS et al., Appellants.

No. 41428.

JUNE 24, 1932.

Wright & Baldwin, George S. Wright, Addison G. Kistle, and Paul E. Roadifer, for appellee.

Kimball, Peterson, Smith & Peterson and Lynn S. Alberti, for appellants.

DE GRAFF, J.—The city of Council Bluffs owns its water plant, having acquired it in the year 1911. The plant is managed and controlled by a board of three trustees, appointed as by law provided. There has been levied and collected, for the operation of said water plant, the statutory five-mill tax each year, and in addition thereto, the statutory two-mill tax for a sinking fund to retire outstanding bonds and pay interest thereon. In addition thereto, there has been collected a large sum of money for water rentals and the like; and from these sources, to wit, taxes and water rentals, after deducting the expense of operation and after paying the original bonds for the purchase

price, there remains in the hands of the City Treasurer, to the credit of the water fund, the sum of $209,966.63.

In the year 1921, $300,000.00 worth of bonds were issued to derive money for betterments, extensions and improvements, and in the year 1931, $260,000.00 of those bonds were unpaid and outstanding, and are payable at the rate of $40,000.00 per year, with the right of the municipality to pay any or all of said bonds at any interest-paying date after February 1, 1931.

The City Council and the Board of Waterworks Trustees, acting in conjunction, were proceeding to use this fund for purchase of real estate and to pay the cost of constructing thereon a building, a part of which was to be used by the Board of Trustees, and the remainder of which building, and by far the greater portion thereof, to be used by the municipality in housing its prisoners in a jail, in housing its municipal judges, bailiffs, and other court attachés, its police department and the like.

There is no dispute in the record but that the statutory five-mill levy and the statutory two-mill levy have been made and collected each year since the acquisition of the waterworks, and that the amount of taxes so levied and received, together with all of the receipts from water rentals and the like, has been sufficient to operate the plant and pay all of its indebtedness, and would, if used therefor, pay, with the exception of a few thousand dollars, all of the outstanding $260,000.00 of bonds issued for betterments and improvements; but the record also shows that if the five-mill tax had not been levied and collected, the water fund would have been overdrawn $584,660.00.

Authority to expend the money in the water fund is claimed by defendants-appellants to rest in Chapter 161 of the Acts of the 44th General Assembly of the state. A construction of the act in question will, therefore, dispose of the issues presented for determination. We set forth the Act, including its title, in full. It is as follows:

"Chapter 161
"Utilities in Certain Cities

"An Act to amend the law as it appears in chapter three hundred twelve (312) of the Code of Iowa, 1927, relating to heating plants, water or gas works and electric plants; to provide for and authorize the use of surplus earned from the opera-

tion of municipal water plants in cities of more than forty thousand (40,000) and less than fifty thousand (50,000), having a board of trustees managing such plant; to authorize the use of said surplus earnings in said cities for the purpose of acquiring property and erecting a building or buildings thereon for its use and for the use of other city departments or agencies.

"Be it enacted by the General Assembly of the State of Iowa:

"Section 1. That chapter three hundred twelve (312) of the Code of Iowa, 1927, be and the same is hereby amended by adding thereto the following:

"Any city having a population of over forty thousand (40,000) and less than fifty thousand (50,000) and having a board of waterworks trustees, and having a surplus earned from the operation of a municipal waterworks plant, may, by action of and under the supervision of such board of waterworks trustees, purchase, acquire, or accept possession of the necessary property, and may erect thereon such building or buildings as may be necessary for the proper maintenance of the business of said waterworks department, and it may erect from such surplus such additional building space for use of such other city departments as it may deem advisable, and until such time as the board may desire or need such additional space for its own uses it may rent such space to other city departments for their uses."

It is conceded that Council Bluffs has a population of over 40,000 and less than 50,000, and has a Board of Waterworks Trustees. Whether it has a surplus earned from the operation of its municipal waterworks is the important question with which this court is confronted. It is a matter of first impression in this state, although we have heretofore considered, to some extent, the powers and duties of City Councils and Boards of Waterworks Trustees with respect to providing funds to discharge obligations in connection with the purchase and operation of municipal waterworks. See Jensen v. Zurmuehlen, 185 Iowa 593.

The statute under consideration does not seem to be susceptible of more than one construction. It allows surplus earned from the operation of a municipal water plant to be used in certain specified ways. It does not allow surplus accumulated from taxation to be so used.

In 19 C. J., pages 853-854, "earnings" are said to be "That which is earned; money earned; the price of services performed; reward; the reward of labor or the price of personal service performed; the reward for personal services, whether in money or chattels; the fruit or reward of labor; the fruits of the proper skill, experience and industry; the gains of a person derived from his services or labor without the aid of capital; money or property gained or merited by labor, service, or the performance of something; that which is gained or merited by labor, services or performances."

Taxes are generally defined as enforced contributions to provide for the support of the government. United States v. La Franca, 282 U. S. 568, 75 Law. Ed. 551. They are not debts but are monetary burdens placed upon individuals or their property for the support of the government. City of Boston v. Revere Building, 177 N. E. 577 (Mass.). To say that enforced contributions are earnings is contrary to every reasonable analysis of the word and to every definition that can properly be given to the term.

The record discloses, without dispute, that the water fund has been kept in such a way as that the money derived from taxation and the money derived from other sources has been commingled in one fund known as the water fund. It is apparent, therefore, that it cannot be said, as a matter of fact, that the money now on hand in the water fund constitutes surplus earned from the operation of the municipal water plant.

Section 6151-b1, Code of 1927, passed by the 42nd General Assembly, permitted the transfer of what was called "surplus earnings" from any municipal waterworks and the like. It provided that where the original purchase bonds, or where bonds issued for improvements, had been paid, or where an adequate sinking fund had been provided for the payment of such bonds, the city might, upon approval of the director of the budget, appropriate and transfer any surplus earnings from any municipal waterworks, for the purpose of retiring existing bonded indebtedness of said city, or town, which was payable by general taxation. Section 6151-b2 provided that any city or town having a surplus earned from the operation of a municipal waterworks plant, and which had no bonded indebtedness, might, on the ap-

proval of the budget director, transfer the surplus earnings of such utilities to any other fund of the municipality.

The first section above quoted was amended by Chapter 160 of the Laws of the 44th General Assembly in such a way as to not permit the use of such surplus earnings unless those earnings were in excess of the amount required for the retirement of all bonds and interest due in the current year and the succeeding year, and by adding to the section the right to use the surplus in the event proper, not only for the retirement of existing bonded indebtedness, but also for the purpose of making any municipal improvement authorized by law and ordered by the City Council.

Section 6151-b2 of the Code of 1927 was likewise amended by Chapter 160 of the Laws of the 44th General Assembly, so that the transfer therein contemplated might be made even though the plant had a bonded indebtedness against it, provided the plant had sufficient funds on hand to provide for the current year's interest and principal and the succeeding year's interest and principal. The same sections of the Code of 1927 were amended by Chapter 183 of the laws of the 43rd General Assembly by adding, immediately following the last section, 6151-b2, a section to be known as 6151-c1, and provided that in all cities and towns having a population of 5,000 or less, the transfer of funds, as provided in the two preceding sections, might be made without the approval of the budget director, provided the amount transferred in any one fiscal year did not exceed fifty per cent of the surplus in the fund at the beginning of that fiscal year.

These sections of the 1927 Code, together with the amendments referred to, are to be taken into consideration in construing the Act here under consideration, which added to the Chapter in which the foregoing sections are found the language which we have heretofore set forth at length in this opinion. We refrain from distinguishing between "earned surplus" in its usual adaptation, and "surplus earned from operation," for we construe only the wording of the statute.

The first section refers to "surplus earnings"; the second section refers to "surplus earned"; the amendment by the 43rd G. A. does not describe the funds other than by reference to the two preceding sections, but the title of the Act relates to the use of "surplus earnings". This Act of the 43rd G. A. denies the

right to transfer in any one fiscal year more than fifty per centum of the surplus in the surplus earnings fund.

It must be plain that the Legislature never intended to give unto the City or to the Board of Waterworks the power to accumulate any money levied as taxes for the maintenance and operation of the waterworks and use such taxes for the purpose of building any other public buildings. If such were the case, great abuses might arise therefrom. A city which has reached the limit of its constitutional indebtedness might nevertheless continue to tax the public by the use of the five-mill and two-mill waterworks levy, and use the funds derived therefrom for the purpose of constructing or making public improvements which it would not be authorized to do. Section 6211, Par. 17, Code of 1931.

We held in the Jensen case, supra, that the law which provided for the appointment of a Board of Waterworks Trustees created a real trust, which holds the physical property and the funds above the mere discretion of the city or its council, and further held, in effect, that the power conferred by the statute upon the trustees is commensurate with the duty laid upon them, and that when they reach the full limit of duty performed, they will likewise reach the full limit of power conferred. We further held that, as a matter of law, the trustees were under no statutory duty to accumulate a surplus as such. Further on in the opinion, we stated as follows:

"It is to be granted that the duties of the trustees must have some flexibility and elasticity. We do not hold that the trustees are required to estimate accurately in advance the exact amount of the total proceeds to be raised, and that they shall be deemed to transcend their authority when such exact amount is exceeded to any extent. We recognize as a practical fact that only approximate estimates are possible. We recognize, also, that practical wisdom in the performance of such duty would require a margin of safety in the estimate. Reasonable approximation is all that can be required, even though it result in an unexpended balance of some amount. But this consideration applies only to a question of fact, and not to a mere question of law. What would be a reasonable margin of safety in a given case would ordinarily be a question of fact, which should be resolved with liberality in favor of the estimate of the trustees. A working balance of some

reasonable amount might, as a matter of fact, be deemed a necessity to the practical performance of their duty by the trustees."

In the foregoing case, we held that since the effect of the levying of a tax for the maintenance of a waterworks plant and its collection would be only to increase a needless surplus, the City Council was not required to make the levy.

In Muscatine Lighting Co. v. City of Muscatine, 205 Iowa 82, we used this language:

"The municipality incurs, or may incur, corporate liabilities which may greatly burden the taxpayer. It may therein bind itself by commercial contracts. It in practical operation furnishes heat, water, gas, and electric current for commercial enterprises. If these are furnished at a loss, or if the utility is not profitable, the loss falls on the taxpayer, who thereby is taxed, not merely for his proportion of the cost of the government, but for the city's loss, and (perhaps) consumers' gain in commerce and industry. As a general proposition, a municipality ought not to operate utilities at the expense of taxpayers, any more than a private corporation ought to operate them at a loss to its stockholders. They should be made to pay their own way, and the taxpayers ought not to be called upon to assume a burden that was never intended by the establishment."

We also said, as bearing upon the matter, the following:

"The court, in determining the purpose for which municipal indebtedness is proposed to be contracted or bonds issued, will look beyond the form of procedure adopted, and determine the real interest and purpose, whether it is to evade the law or to make illegal use of municipal bonds or funds. The purported action or project, if merely colorable, and a subterfuge, and the real purpose is evasion and law violation, if the design is to cover an illegal or unauthorized purpose or use, will be annulled, and the expenditure prohibited."

Bearing in mind these pronouncements of the court, we must interpret the intent of the Legislature to be that if, in the operation of a municipal waterworks plant, the income from water rentals and the like, other than taxation, exceeds the cost of operation, the remainder is surplus earned from the operation of the plant, or surplus earnings; but that if it requires a part of

the taxes levied and collected to meet the cost of operation, then there can be no surplus earnings.

We have said that the Board of Trustees of the Waterworks plant are in truth and in fact trustees, and that it is their duty to so conduct the affairs of the municipally owned waterworks plant as to make it pay its own way, if possible. We have criticized the Board of Waterworks Trustees for attempting to create a needless surplus. It is the duty of the Board of Trustees to make their estimates such as that rates for water furnished the public may be as low as is consistent with good business judgment. Realizing that these estimates cannot be made with accuracy, and that there may be surplus earnings each year, the Legislature granted certain authority to dispose of said earnings; but this does not permit such surplus earnings to be accumulated over a long period of time and then used for purposes which ordinarily are to be accomplished through the medium of taxation. The court will require the trustees to perform the duties of their trust with the same degree of fairness, good faith and business judgment as it would require the trustees of any other business enterprise to perform.

It appears from the record in this case that, after this suit was commenced, there were expended considerable sums of money from the water fund. This expenditure was made by the board of trustees; in all there has been expended from said fund $20,-000 for the purchase of real estate and $2,000 to pay the fees of architects.

In the decree entered by the trial court the defendants and each of them are permanently enjoined from proceeding further with the erection of the waterworks building or city hall in controversy, or from expending from public funds any money now on hand for the purpose of paying the cost of the erection of any such building, or the cost of any plans by the architect in connection therewith, and are permanently enjoined from doing any act toward the carrying out of the building plans now in progress inconsistent with the holding of the Court herein.

"As to the claim of plaintiff for judgment for the $20,000 expended for the site of said building and for the $2,000 expended for the services of the architect for plans of said building, the Court makes no decision with reference thereto, feeling that the matter is not properly before the court, and feeling that before

a decision on such claims could be made, that the inquiry with reference thereto should depend upon a showing of bad faith and other elements which have not been presented to this court in this action. And that as to the claims of the plaintiff with reference to said two items of expenditures the petition of the plaintiff is dismissed, without prejudice to his further right to take what steps and enforce what rights the law gives him."

The judgment of the trial court is, therefore, affirmed.—Affirmed.

All justices concur.